IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICKY GARCIA,                    )   No. C 05-4009 CW (PR)
                                 )
          Plaintiff,             )   ORDER GRANTING DEFENDANTS' MOTION
                                 )   TO DISMISS AND MOTION FOR SUMMARY
     v.                          )   JUDGMENT
                                 )
GOVERNOR ARNOLD                  )
SCHWARZENEGGER, ET AL.,          )   (Docket nos. 56, 64)
                                 )
          Defendants.            )
_____  )

INTRODUCTION

     Plaintiff Ricky Garcia is a prisoner of the State of New

Mexico who is incarcerated at Pelican Bay State Prison (PBSP) under

the authority of the Western Interstate Corrections Compact

(WICC),[1] which is a cooperative agreement enacted by participating

states to "improve their institutional facilities and provide

programs of sufficiently high quality for the confinement,

treatment and rehabilitation of various types of offenders."  Cal.

Penal Code § 11190 art. I.  As part of the WICC, participating

states provide facilities and programs on a cooperative basis in

order to serve the best interests of the offenders and society.

Id.

     Plaintiff has filed this pro se civil rights action pursuant

to 42 U.S.C. § 1983 alleging constitutional rights violations by

_____

     [1] Plaintiff was actually transferred to PBSP pursuant to the
Interstate Corrections Compact (Compact).  (Young Decl., Ex. E at AG
0045.)   However, both parties refer to the WICC when addressing
Plaintiff's claims.  Except for the enumeration of signatories on the
WICC, the WICC and the Compact are identical in purpose and
construction, and both have been adopted by California and New Mexico.
See Cal. Penal Code §§ 11189, 11190.  Therefore, the Court will
address Plaintiff's claim under the WICC.

PBSP prison officials and employees of the Departmental Review Board (DRB) within the California Department of Corrections and Rehabilitation (CDCR).

Defendants have filed a motion to dismiss and a motion for summary judgment. For the reasons discussed below, Defendants' motions are GRANTED.

PROCEDURAL BACKGROUND

In 2003, Plaintiff filed a prior civil rights action against New Mexico Corrections Department defendants alleging unconstitutional classification and denial of recreation since he was transferred to PBSP in 1994. See Garcia v. Lemaster, 439 F.3d 1215, 1216 (10th Cir. 2006). Among other claims, he alleged that the defendants violated his Eighth and Fourteenth Amendment rights by unlawfully confining him in administrative segregation for seventeen years and by denying him a classification hearing in accordance with New Mexico law during his incarceration in California. See id. at 1216. The New Mexico district court granted the defendants' motion to dismiss Plaintiff's claims. Id. at 1216-17. On appeal, the Tenth Circuit Court of Appeals affirmed and held that Plaintiff did not have a state-created liberty interest in conditions of confinement in accord with New Mexico regulations because the "[a]pplication of California's procedures to out-of-state inmates housed in California prisons does not impose an 'atypical and significant hardship' on such prisoners." Id. at 1219 (citation omitted).

On October 4, 2005, Plaintiff filed the present action.

In an Order dated February 24, 2006, the Court found that Plaintiff's allegations presented cognizable claims for relief for:

2

(1) the denial of his Fourteenth Amendment right to due process based on his indeterminate detention in the Security Housing Unit (SHU); (2) the violation of his Eighth Amendment right to be free from cruel and unusual punishment based on the alleged physical and psychological injuries stemming from his prolonged SHU confinement; (3) a conspiracy by prison officials to deprive him of these rights; (4) the violation of his rights under the Fourth Amendment based on the compelled withdrawal and maintenance of his DNA in a California database; (5) the deprivation of a state-created liberty interest under the WICC; and (6) supplemental state law claims based on PBSP officials' failure to comply with New Mexico Corrections Department regulations.  The Court dismissed all other claims.

The Court found Plaintiff had named and directly linked to his allegations the following Defendants:  T. Schwartz, former PBSP associate warden; J. Cox, PBSP correctional officer II and classification review committee member; S. O'Dell, K.A. Nealy, T. Fischer, former PBSP unit counselors and committee members for SHU-C11 inmates; M.J. Nimrod, PBSP appeals coordinator; W.A. Duncan, DRB Deputy Director of the Institution Division; L. Rianda, DRB Chief of the Classification Services Unit; R. Hickman, DRB Regional Administrator; E. Elmer, DRB Assistant Deputy Director; and J. Diggs, DRB Chief of the Classification Services Unit.

Plaintiff's case was referred to Magistrate Judge Nandor Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program (docket no. 12).[2]  The parties were unable to reach an

---

[2] The Pro Se Prisoner Mediation Program has been renamed the Pro Se Prisoner Settlement Program.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

agreement (docket no 48).

On November 22, 2006, all Defendants except Defendant Schwartz filed a motion to dismiss and a motion for summary judgment (docket no. 56).[3] Defendants allege in their motion to dismiss that Plaintiff's medical claim should be dismissed as unexhausted. In support of their motion for summary judgment, Defendants claim: (1) the evidence shows that Plaintiff's constitutional rights have not been violated; (2) the WICC does not create a liberty interest; (3) Plaintiff has no reasonable expectation of privacy in his DNA; and (4) absolute and qualified immunity protect them from liability for the acts alleged in the complaint. Defendants also allege that Plaintiff's claims are barred by issue preclusion and by the statute of limitations. Plaintiff filed an opposition to Defendants' motion to dismiss and motion for summary judgment (docket no. 61). Defendants filed a reply to Plaintiff's opposition (docket no. 63).

FACTUAL BACKGROUND

On May 16, 1979, Plaintiff was convicted of Armed Robbery and incarcerated at the New Mexico State Penitentiary. (Young Decl., Ex. C at AG 0005.) On February 2 and 3, 1980, Plaintiff took part in a Santa Fe, New Mexico prison riot in which thirty-three inmates died. (Id., Ex. J at AG 0139.) Plaintiff was found to be in possession of a weapon during the riot. (Id.)

---

[3] To date, Defendant Schwartz has not been served. On May 3, 2006, the Office of General Counsel informed the Court that service could not be completed on Defendant Schwartz because he was no longer employed at PBSP. A Notice of Lawsuit and Request for Waiver of Service of Summons was mailed to Defendant Schwartz at his new address. However, Defendant Schwartz did not respond. Therefore, he does not join the other Defendants in their motion to dismiss or motion for summary judgment.

On February 26, 1981, Plaintiff attacked and killed an inmate. He also stabbed and killed the correctional officer who was attempting to stop the fight. (Id., Ex. D at AG 0019-20.) Plaintiff was convicted of both murders and was sentenced to death. (Id., Ex. C at AG 0010.) In 1986, his death sentence was commuted by the governor of New Mexico. (Id. at AG 0018.)

Plaintiff also has a history of escape. On December 1, 1978, Plaintiff escaped from the Albuquerque County Jail but was recaptured. (Id., Ex. D at AG 0036.) He escaped again on April 6, 1979 but was again recaptured. (Id.) Eight months later, Plaintiff escaped from the New Mexico State Penitentiary but was later apprehended. (Id.) On May 3, 1980, New Mexico prison officials disciplined Plaintiff for planning an escape when they found his cell bars cut. (Id.) In November, 1992, Plaintiff was transferred to the Minnesota Correctional Facility. (Id., Ex. E at AG 0044.) Seven months later, the Minnesota Department of Corrections requested Plaintiff be returned to New Mexico based on his high escape risk. (Id., Ex. E at AG 0040.)

On March 18, 1994, the New Mexico Corrections Department requested to transfer Plaintiff to a California facility pursuant to the WICC. (Id., Ex. E at AG 0045.) California officials agreed, and Plaintiff was received into PBSP on May 3, 1994. (Compl. at 11-12.)

Two days later, Plaintiff appeared before PBSP's Institutional Classification Committee (ICC) for his initial classification. (Young Decl., Ex. J at AG 0138.) The ICC decided to house Plaintiff on indeterminate SHU status noting that his release to the general population at this time "would pose an undo [sic]

threat to the safety & security of this institution" based upon a "lengthy disciplinary history noting I/M GARCIA's propensity to carry out violent acts against staff and I/M's." (<u>Id.</u> at AG 0139.)

Since his initial placement, the ICC has conducted annual classification reviews. (<u>Id.</u>, Ex. J at AG 0093-0138.) Plaintiff, however, refused to attend his first four annual reviews. (<u>Id.</u>) Each time, the ICC has chosen to retain Plaintiff on indeterminate SHU status, determining that he was a threat to the safety and security of PBSP based on his history of violence and escape and his affiliation with a prison gang. (<u>Id.</u>, Ex. I.) Before each ICC hearing, Plaintiff received written notice of the review and the reasons supporting his indeterminate SHU placement. (<u>Id.</u>)

At his sixth classification hearing, on October 25, 2000, Plaintiff requested that Defendants "conduct there [sic] hearing under the New Mexico governing laws being that Plaintiff and the defendants . . . are under a Compact contract." (Compl. at 13-14.) Defendants denied his request and referred Plaintiff to Title 15 of the California Code of Regulations § 3001, which states that all California inmates, regardless of commitment circumstances, are subject to the rules and regulations of the Director of CDCR. (Young Decl., Ex. J at AG 0111.)

On September 11, 2003, the DRB reviewed the ICC's decision to continue housing Plaintiff on indeterminate SHU status. (Compl. at 15.) The DRB agreed that Plaintiff would pose an unacceptable risk to the safety and security of staff and inmates if he was released to general population. (<u>Id.</u>) Therefore, Plaintiff's indeterminate SHU status was upheld. (<u>Id.</u>)

PBSP's Unit Classification Committee (UCC) also reviewed each

of the ICC's classification decisions.  On February 24, 2004,
Plaintiff appeared before the UCC for a 180-day review of his
indeterminate SHU confinement.  (Compl. at 15.)  Plaintiff asked
Defendants Cox and O'Dell that "they conduct Plaintiff's hearing
under the governing laws of New Mexico" pursuant to the WICC.  (Id.
at 16.)  Plaintiff alleges that Defendant Cox "than turn [sic] to
Defendant O'Dell and ordered him to get the Plaintiff out of there
[sic] committee." (Id.)  Defendant O'Dell then "ordered the two
correctional officers . . . to escort the Plaintiff back to his
unit." (Id.)  Plaintiff alleges Defendants Cox and O'Dell
continued the 180-day review without his presence.  (Id.)  The UCC
upheld the ICC's decision to hold Plaintiff on indeterminate SHU
status based on Plaintiff's history of violence and escape and his
affiliation with a prison gang.  Plaintiff's classification chrono
of the UCC's 180-day review did not state that Plaintiff was
removed from the hearing prior to its completion.  (Id.)  Plaintiff
alleges that Defendants Cox and O'Dell covered up their actions of
"runing [sic] Plaintiff" out of  his 180 day-review.  (Id.)  The
same day, Plaintiff filed a 602 inmate appeal stating he was "run
off from his committee hearing" for challenging the UCC's ability
to hold the meeting "when they have no authority or jurisdiction
over inmate's case." (Id., Ex. P.)  Plaintiff requested that he be
released from indeterminate SHU status until a hearing could be
conducted under New Mexico law or, in the alternative, be
transferred back to New Mexico.  (Id.)

On April 14, 2004, Plaintiff's appeal was rejected by
Defendant Nimrod, who stated, "You have raised the exact same
issues before concerning CDC jurisdiction . . . . This cannot be

reappealed."  (<u>Id.</u>)  Plaintiff alleges that Defendant Nimrod's response to his appeal was "a smoke screen because he did not want to investigate and interview the defendant's [sic] as to why they ran the Plaintiff out from his 180-day review hearing."  (<u>Id.</u> at 18.)

Plaintiff refused to attend any further classification or review hearings unless they were held pursuant to New Mexico law. (Young Decl., Ex. J.)

Plaintiff alleges that on April 28, 2005, PBSP officials requested a DNA sample.  (Compl. at 50.)  Plaintiff refused claiming that under the terms of the WICC he was not subject to California laws.  (<u>Id.</u>)  He alleges he was threatened with physical force to gain his compliance.  (<u>Id.</u>)

On May 5, 2005, Plaintiff agreed "under protest" to submit to DNA testing.  (<u>Id.</u> at 51.)  Five days later, Plaintiff filed a 602 inmate appeal requesting the DNA sample be destroyed.  (<u>Id.</u>) Plaintiff's 602 inmate appeal was denied because the DNA sample was ordered by the Department of Justice, and not by PBSP officials. (<u>Id.</u>, Ex. R.)

DISCUSSION

I.   Motion to Dismiss

A.   Standard of Review

The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purposes of the exhaustion

United States District Court
For the Northern District of California

requirement set forth at 42 U.S.C. § 1997e(a) include allowing the prison to take responsive action, filtering out frivolous cases, and creating administrative records.  Porter v. Nussle, 534 U.S. 516, 525 (2002).  In order to satisfy the requirement, the exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."  Id.; Booth v. Churner, 532 U.S. 731, 739-40 & n.5 (2001).

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  See Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution; (2) formal written appeal on a 602 inmate appeal form; (3) second level appeal to the institution head or designee; and (4) third level appeal to the Director of the CDCR.  See id. § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the administrative remedies exhaustion requirement under § 1997e(a). See id. at 1237-38.

When no other administrative remedy is available, the exhaustion requirement is deemed fulfilled.  See Booth, 532 U.S. at 736 n.4.  The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance.  Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  For example, a prisoner need not exhaust further levels of review once he has either received all the

remedies that are available, or been reliably informed by an administrator that no more remedies are available. Id. at 935. By contrast, an inmate was deemed not to have exhausted all available remedies where he was informed at the second formal level that his administrative appeal would be treated as a staff complaint, that any non-staff claims should be separately appealed, that further review was available if he was dissatisfied, and that his appeal was denied. Id. at 940-43.

Non-exhaustion under § 1997e(a) is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 922-23 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required specifically to plead or demonstrate exhaustion in their complaints. Jones, 127 S. Ct. at 921-22. Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

    B.   Analysis

Defendants contend that Plaintiff's Eighth Amendment claim is unexhausted as to allegations of Defendants' failure to treat the side effects of his thyroid disease. As evidence of absence of exhaustion, Defendants point to Plaintiff's 602 inmate appeal no. PBSP 05-02410, filed on September 1, 2005, alleging Defendants ignored Plaintiff's request for treatment of his thyroid disease. (Pl.'s Opp'n, Ex. L.)

10

United States District Court
For the Northern District of California

The record shows that appeal no. PBSP 05-02410 was denied at the informal level on September 6, 2005. (Id.) On September 12, 2005, Plaintiff filed a formal level appeal. While awaiting his formal level appeal results, Plaintiff filed the present action on October 4, 2005. Plaintiff's appeal was eventually exhausted on May 10, 2006, when it was denied at the Director's level. Thus, although the appeals process was exhausted, Plaintiff did not satisfy the administrative remedies exhaustion requirement by pursuing his claims to the Director's level until several months after he filed this lawsuit.

Plaintiff maintains that he exhausted his administrative remedies as to his medical claim through another 602 appeal, appeal no. PBSP 00-02259. (Pl.'s Opp'n at 17.) However, a review of appeal no. PBSP 00-02259 reveals that this appeal, although exhausted, only addresses Plaintiff's contention that he is entitled to the application of New Mexico law at his classification hearings and makes no reference to Defendants' alleged failure to treat Plaintiff's thyroid disease. (Young Decl., Ex. F at AG 0059.) Therefore, the record does not support Plaintiff's claim.

Plaintiff did not exhaust administrative remedies with respect to his medical claim in a timely or complete manner. Accordingly, Defendants' motion to dismiss this claim as unexhausted is GRANTED.

II.  Motion for Summary Judgment

A.  Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P.

11

56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986);
<u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir.
1987).

   The moving party bears the burden of showing that there is no
material factual dispute.  Therefore, the Court must regard as true
the opposing party's evidence, if supported by affidavits or other
evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815
F.2d at 1289.  The Court must draw all reasonable inferences in
favor of the party against whom summary judgment is sought.
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d
1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an
opposing affidavit under Rule 56, as long as it is based on
personal knowledge and sets forth specific facts admissible in
evidence.  <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th
Cir. 1995).

   Material facts which would preclude entry of summary judgment
are those which, under applicable substantive law, may affect the
outcome of the case.  The substantive law will identify which facts
are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).  Where the moving party does not bear the burden of proof
on an issue at trial, the moving party may discharge its burden of
showing that no genuine issue of material fact remains by
demonstrating that "there is an absence of evidence to support the
nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.  The burden
then shifts to the opposing party to produce "specific evidence,
through affidavits or admissible discovery material, to show that
the dispute exists." <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409

(9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 994 (1991). A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. at 323.

    B.    Legal Claims

        1.    State-Created Liberty Interest Claim

    Plaintiff alleges that there exists a state-created liberty interest in being housed in compliance with applicable New Mexico regulations under the WICC. (Compl. at 58-59.) He contends that the WICC "mandates [the] use of governing laws and regulations of the state that convicted prisoner and sent prisoner to California for incarceration when California provides any hearing." (<u>Id.</u> at 21-22.)

    In asserting his claim, Plaintiff relies on a WICC statutory provision which states:

> Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state. . . . In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state. . . . In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any manner except by the appropriate officials of the sending state.

Cal. Penal Code § 11190 art. IV (f). Although this language suggests Plaintiff may be entitled to hearings under New Mexico law, a WICC provision will not support a § 1983 claim unless it creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

13

United States District Court
For the Northern District of California

A state-created liberty interest is found only where the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Ghana v. Pearce, 159 F.3d 1206, 1208-09 (9th Cir. 1998)  In Ghana, the plaintiff was transferred from the New Jersey state prison system to the Oregon State Penitentiary pursuant to the Compact.  The plaintiff claimed that his disciplinary hearings were defective because the Compact entitled him to the protections of the sending state's procedural rules. Id. at 1209.  The Ninth Circuit disagreed and held that conducting the plaintiff's disciplinary hearing under Oregon law instead of New Jersey law did not create an "atypical and significant hardship" and thus no state liberty interest was created under the Compact's statutory provisions.  Id. at 1208-09.  As a result, the court concluded that any alleged violations under the Compact are not actionable under 42 U.S.C. § 1983.  See id. at 1209.

Here, Plaintiff alleges that, under New Mexico regulations, he would be afforded better treatment than other prisoners housed at PBSP because he would have access to programs and eventually be released into general population.  (Young Decl., Ex. F at AG 0059.)

Under Title 15 of the California Code of Regulations, every inmate, regardless of commitment circumstances, confined in a CDCR facility is subject to the same rules and regulations and to the procedures established by the warden or superintendent responsible for that facility.  Cal. Code Regs. tit. 15, § 3001.  The Court finds that the application of California regulations and procedures at Plaintiff's classification hearings at PBSP does not impose an

atypical or significant hardship and, therefore, no state liberty
interest is created under the WICC.  Therefore, the application of
California procedures could not form a basis for a § 1983 due
process claim.  See Ghana, 159 F.3d at 1209; see also Stewart v.
McManus, 924 F.2d 138, 141-42 (8th Cir. 1991) (deciding inmate had
no liberty interest entitling him to application of sending state's
disciplinary rules to his disciplinary proceedings in receiving
state and the Compact is not federal law and cannot be a basis for
a § 1983 due process claim).

     Accordingly, Defendants are entitled to summary judgment on
Plaintiff's state-created liberty interest claim as a matter of
law.  Celotex, 477 U.S. at 323.

     Furthermore, even if the Court did find a state-created
liberty interest under the WICC, Defendants would be entitled to
absolute immunity from suit.  The Eleventh Amendment provides
absolute immunity to state officials for suits in federal court
alleging breach of contract under state law.  See Pennhurst State
Sch. & Hosp v. Halderman, 465 U.S. 89, 106 (1984).  The WICC, like
the Compact, is not federal law, but state law.  See Ghana, 159
F.3d at 1208.  Therefore, to the extent that Plaintiff claims that
Defendants have failed to abide by the terms of the WICC, such
claims are barred by the Eleventh Amendment.

          2.   Fourteenth Amendment Claims

               a.   Indeterminate SHU Placement

     Plaintiff alleges Defendants violated his Fourteenth Amendment
right to due process because his indeterminate SHU placement
creates an "atypical and significant hardship."  (Compl. at 61.)

15

United States District Court
For the Northern District of California

1
2
3

4
5
6
7
8
9
10

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26
27
28

Plaintiff also alleges that his due process rights were violated when Defendants used an erroneous gang classification as evidence to support his indeterminate SHU housing.  (Id.)

Interests that are protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the states.  See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Wilkinson v. Austin, the Supreme Court held that indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context."  545 U.S. 209, 223-25 (2005).  Because indefinite placement in California's SHU generally renders inmates ineligible for parole consideration, it appears that California prisoners also have a liberty interest in not being placed indefinitely in the SHU.  Accord id. at 224-25 (necessity of harsh conditions in light of danger that high-risk inmates pose to prison officials and other inmates does not diminish conclusion that conditions rise to a liberty interest in their avoidance).  The Court need not decide whether this is the case, however, because even if an atypical and significant hardship was imposed, Plaintiff received all of the due process to which he was entitled.

In Toussaint v. McCarthy, the Ninth Circuit approved what it referred to as "substantive" requirements adopted by the district court for use at periodic reviews.  801 F.2d 1080, 1101-02 (9th

16

Cir. 1986).  These requirements were that "a prisoner not be placed or retained in segregation unless allowing the prisoner to remain in the general population would severely endanger the lives of prisoners, the security of the institution, or the integrity of an investigation into suspected criminal activity or serious misconduct."  Id. at 1101.

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons, due process requires that they comply with the following procedures:  (1) they must hold an informal non-adversary hearing within a reasonable time after the prisoner is segregated; (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered; and (3) the prisoner must be allowed to present his views.  See Toussaint, 801 F.2d at 1100.  Following placement in administrative segregation, prison officials must engage in some sort of periodic review of the inmate's confinement.  See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101.

Upon arrival at PBSP, Plaintiff was brought before the ICC.  At his initial screening, Plaintiff was informed that he was being housed on indeterminate SHU status based on his history of extreme violence and escape as well as his affiliation with a prison gang.  Plaintiff's housing placement was also periodically reviewed by both the UCC and the DRB.  Finally, Plaintiff was afforded periodic reviews of his SHU placement.  Therefore, the Court finds Defendants satisfied the due process requirements by complying with the aforementioned procedures.

In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the

**United States District Court**
For the Northern District of California

Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board.  The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons.  See Toussaint, 801 F.2d at 1104.

Plaintiff argues that the evidence supporting his indeterminate SHU confinement was insufficient because it did not demonstrate that he had engaged in prison gang activity.  Even if Plaintiff could support his claim that he is not engaged in gang activity, Defendants used Plaintiff's extensive history of violence, against both correctional officers and inmates, along with a history of escape as evidence to support their decision to place Plaintiff on indeterminate SHU status.  Therefore, the Court finds that some evidence supports Defendants' decision.  See Toussaint, 801 F.2d at 1104.

The Court finds that Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that his confinement in the SHU on indeterminate status violates the Fourteenth Amendment.  See Celotex, 477 U.S. at 323.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

b.   Conspiracy

Plaintiff alleges Defendants Cox, O'Dell and Nimrod conspired to deprive him of his due process rights when they had him removed from his 180-day review hearing.

To prove conspiracy between Defendants Cox, O'Dell, and

18

United States District Court
For the Northern District of California

1   Nimrod, an agreement to violate Plaintiff's Fourteenth Amendment

2   right to due process must be shown.  See <u>Fonda v. Gray</u>, 707 F.2d

3   435 (9th Cir. 1983).  Defendants argue that Plaintiff has no

4   factual basis to support his claim.  Moreover, Plaintiff does not

5   show that any actual deprivation of his constitutional rights

6   resulted from the alleged conspiracy.  See <u>Singer v. Wadman</u>, 595

7   F. Supp. 188 (D. Utah 1982), <u>aff'd</u>, 745 F.2d 606 (10th Cir. 1984),

8   <u>cert. denied</u>, 470 U.S. 1028 (1985) (conspiracy allegation, even if

9   established, does not give rise to liability under § 1983 unless

10  there is an actual deprivation of civil rights).  The Court finds

11  that Plaintiff's conclusory allegations that Defendants Cox, O'Dell

12  and Nimrod conspired do not support a claim for violation of his

13  constitutional rights under § 1983.  See <u>Aldabe v. Aldabe</u>, 616 F.2d

14  1089 (9th Cir. 1980); <u>Lockary v. Kayfetz</u>, 587 F. Supp. 631 (D. Cal.

15  1984) (allegations of conspiracy must be supported by material

16  facts, not merely conclusory statements).  Accordingly, Defendants

17  Cox, O'Dell and Nimrod are entitled to summary judgment on

18  Plaintiff's conspiracy claim.

19

        3.   Eighth Amendment Claim

20

21       Plaintiff alleges his indeterminate SHU confinement for the

22  past eleven years violates the Eighth Amendment by subjecting him

23  to "severe physical and mental pain and suffering." (Compl. at

24  45.)  Specifically, Plaintiff maintains that he suffers from

25  impaired vision, frequent headaches, shortness of breath, anxiety,

26  and depression due to his prolonged SHU confinement.  (<u>Id.</u> at 46.)

27  He alleges that he was required to spend twenty-two and a half

28  hours a day in his cell.  (<u>Id.</u> at 45.)  He claims that "Defendants

                                  19

**United States District Court**
For the Northern District of California

only allowed Plaintiff to leave his cell to go to the 'dog walk,' which is a small bare concrete indoor bunker with [a] high opaque ceiling that block [sic] out direct light." (<u>Id.</u>)  However, he alleges that he was "forced to forgo fresh air and yard [time] for weeks at a time" because he refused to use the shared common jacket and demanded the prison provide him with his own thermal underwear, gloves and jacket.  (Compl. at 49.)  Plaintiff maintains that he had to "choose between exposing himself to infection, declining yard [time] or being inadequately clothed in inclement weather." (<u>Id.</u>)

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials.  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992).  The Eighth Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 832; <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 199-200 (1989); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982).

Exercise is one of the basic human necessities protected by the Eighth Amendment.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991) (regular exercise).  Some form of regular exercise, including

United States District Court
For the Northern District of California

1   outdoor exercise, "is extremely important to the psychological and

2   physical well being" of prisoners.  See Spain v. Procunier, 600

3   F.2d 189, 199 (9th Cir. 1979).  Prison officials therefore may not

4   deprive prisoners long-term of regular outdoor exercise.  Id.

5       The Court construes Plaintiff's claim of a deprivation of

6   fresh air and yard time as a claim of denial of outdoor exercise.

7       Deprivation of necessities by a prison official violates the

8   Eighth Amendment when two requirements are met:  (1) the

9   deprivation alleged must be, objectively, sufficiently serious, see

10  Farmer, 511 U.S. at 834 (citing Wilson, 501 U.S. at 298), and

11  (2) the prison official possesses a sufficiently culpable state of

12  mind, see id. (citing Wilson, 501 U.S. at 297).  In determining

13  whether a deprivation of a basic necessity, such as outdoor

14  exercise, is sufficiently serious to satisfy the objective

15  component, a court must consider the circumstances, nature and

16  duration of the deprivation.  See Spain, 600 F.2d at 199.  To

17  satisfy the subjective component, the requisite state of mind

18  depends on the nature of the claim.  In prison-conditions cases,

19  the necessary state of mind is one of "deliberate indifference."

20  See, e.g., Farmer, 511 U.S. at 834 (inmate safety).

21

22      In Spain, the Ninth Circuit held that the deprivation of

23  outdoor exercise constituted cruel and unusual punishment where the

24  inmates were confined to continuous segregation for a period of

25  over four years under harsh conditions.  See generally Spain, 600

26  F.2d at 189.  The plaintiffs were in continuous segregation,

27  spending virtually twenty-four hours a day in their cells.  Id.

28  They had little contact with other people, lived in degrading

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

conditions, and there was an atmosphere of fear and apprehension. Id.  In addition, the prison provided no programs of training or rehabilitation.   Id.

The denial of outdoor exercise for security reasons does not violate the Eighth Amendment.   See LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993).   In LeMaire, the Ninth Circuit reversed the district court's post-trial findings that depriving the plaintiff of outdoor exercise during his nearly five year confinement amounted to an Eighth Amendment violation.   Id.   The plaintiff in LeMaire had attacked two correctional officers and vowed to attack again; therefore, the court found that restricting his exercise privileges to exercising only within his cell did not meet the subjective requirements for an Eighth Amendment violation because "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent inmates."   Id. Similarly, in Hayward v. Procunier, the Ninth Circuit affirmed the district court's denial of declaratory relief and rejection of the Eighth Amendment claim where the plaintiffs were denied outdoor exercise for five months following a lockdown in response to a "genuine emergency."   629 F.2d 599, 603 (9th Cir. 1980), cert. denied, 451 U.S. 937 (1981).

Here, as mentioned above, Plaintiff was housed on indeterminate SHU status based on his history of extreme violence and escape and his affiliation with a prison gang.   "Prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff

22

United States District Court
For the Northern District of California

1   and other prisoners from such violent inmates." <u>Lemaire</u>, 12 F.3d

2   at 1458.   Moreover, Plaintiff's confinement conditions were not as

3   harsh as the conditions in <u>Spain</u>.   The record shows that he was

4   provided with one and a half hours per day of out-of-cell activity.

5   Unlike the plaintiffs in <u>Spain</u>, Plaintiff had the opportunity to

6   exercise outdoors during this time; however, he refused to use the

7   shared common jacket and lost that opportunity.

8       Thus, Plaintiff has not made a showing sufficient to survive

9   summary judgment on this claim.   Accordingly, Defendants are

10  entitled to summary judgment on Plaintiff's Eighth Amendment claim

11  stemming from the denial of outdoor exercise.

12          4.   Fourth Amendment Claim

13

14      Plaintiff alleges a Fourth Amendment violation because he was

15  compelled to provide a DNA sample under the California DNA and

16  Forensic Identification Database and Data Bank Act of 1998 (DNA

17  Act), even though he was not convicted under California law.

18  (Compl. at 51.)

19      The Ninth Circuit Court of Appeals has held that mandatory

20  blood draws for DNA testing of persons on conditional release does

21  not offend the Fourth Amendment.   <u>See United States v. Kincade</u>, 379

22  F.3d 813, 839-840 (9th Cir. 2004) (en banc).[4]   In an earlier case,

23

24  _____

25          [4] No majority was reached in <u>Kincade</u> regarding the proper
    analytical framework for the analysis of DNA testing.   The plurality

26  view was that DNA testing was permitted under the "totality of the
    circumstances" rule from <u>United States v. Knights</u>, 534 U.S. 112

27  (2001), while the concurring judge agreed that DNA testing was
    permissible but should have been analyzed under the special needs

28  rule.   <u>See Kincade</u>, 379 F.3d at 839-40.

United States District Court
For the Northern District of California

Rise v. Oregon, the Ninth Circuit held that an Oregon statute
requiring convicted murderers and sex offenders to submit to blood
testing for DNA analysis did not violate the Fourth Amendment.  59
F.3d 1556, 1562 (9th Cir. 1995).  In Kincade, the Ninth Circuit,
reaffirmed Rise and held that "its reliance on a totality of the
circumstances analysis to uphold compulsory DNA profiling of
convicted offenders both comports with the Supreme Court's recent
precedents and resolves this appeal in concert with the
requirements of the Fourth Amendment."  Kincade, 379 F.3d at 832.

The DNA Act was enacted "to assist federal, state, and local
criminal justice and law enforcement agencies within and outside
California" to identify and prosecute suspects by use of their DNA.
Cal. Penal Code § 295(c).  As part of the DNA Act, an offender's
transfer to a California correctional facility pursuant to the WICC
"is conditional on the offender providing blood specimens, buccal
swab samples, and palm and thumb print impressions."  Cal. Penal
Code § 296.1(a)(5)(A).  Inmates transferred pursuant to the WICC
must submit DNA samples if they have been convicted of a qualifying
offense.  Id.  A felony conviction in any state, federal or
military court is considered a qualifying offense for offenders
transferred pursuant to the WICC.  Cal. Penal Code § 296(a)(1).

Here, Plaintiff's New Mexico murder conviction is a qualifying
offense making DNA sampling mandatory under California's DNA Act.
The Court finds no Fourth Amendment violation occurred when
Defendants compelled Plaintiff to provide a DNA sample under the
DNA Act.  Accordingly, Defendants are entitled to summary judgment

24

1  on Plaintiff's Fourth Amendment claim.

2      C.   Qualified Immunity

3          In the alternative, Defendants claim that they are entitled to
4  summary judgment on all claims based on qualified immunity.

5
6          The defense of qualified immunity protects "government
7  officials . . . from liability for civil damages insofar as their
   conduct does not violate clearly established statutory or
8  constitutional rights of which a reasonable person would have
9  known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule
10 of qualified immunity protects "'all but the plainly incompetent or
11 those who knowingly violate the law.'"  Saucier v. Katz, 533 U.S.
12 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341
13 (1986)).  Defendants may have a reasonable, but mistaken, belief
14 about the facts or about what the law requires in any given
15 situation.  Id.  "Therefore, regardless of whether the
16 constitutional violation occurred, the [official] should prevail if
17 the right asserted by the plaintiff was not 'clearly established'
18 or the [official] could have reasonably believed that his
19 particular conduct was lawful."  Romero v. Kitsap County, 931 F.2d
20 624, 627 (9th Cir. 1991).
21

22          To determine whether a defendant is entitled to qualified
23 immunity, the court must engage in the following inquiries.  At the
24 outset, the court must determine whether the plaintiff has alleged
25 the deprivation of an actual constitutional right.  Conn v.
26 Gabbert, 526 U.S. 286, 290 (1999).  In other words, the court must
27 ask, "Taken in the light most favorable to the party asserting the
28

25

United States District Court
For the Northern District of California

injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Saucier, 533 U.S. at 201.  If this inquiry yields a positive answer, then the court proceeds to determine if the right was "clearly established."  Id.

The inquiry as to whether the right at issue was clearly established must be made in light of the specific context of the case, not as a broad general proposition.  Saucier, 533 U.S. at 202.  "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  As the Supreme Court has explained, "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."  Id. at 753.  The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct.  Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his or her conduct was lawful in the situation confronted.  Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).  If the law did not put the officer on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  Saucier, 533 U.S. at 202.  Therefore, qualified immunity shields an officer from suit when he

or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.  Id. at 206.  The defendant bears the burden of establishing that his or her actions were reasonable, even though he or she violated the plaintiff's constitutional rights.  Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

The Court has already found that Defendants' actions do not rise to the level of a constitutional violation as to any of Plaintiff's claims.  However, even if Plaintiff's rights had been violated and his rights were clearly established at the time of the violation, Defendants are entitled to qualified immunity because they have produced sufficient evidence showing that they could have believed that their actions were reasonable in the circumstances of each claim as outlined below.[5]

First, Plaintiff alleges that Defendants' failure to house him in compliance with applicable New Mexico regulations under the WICC violated a state-created liberty interest.  A reasonable prison official in the Defendants' position could have believed it was reasonable to treat all inmates fairly and equally by applying California regulations at Plaintiff's classification hearings. Therefore, Defendants are entitled to judgment as a matter of law on this claim based on their qualified immunity defense.

---

[5] The Court will not address Defendants' qualified immunity defense as to Plaintiff's conspiracy claim because his conclusory allegations do not support a § 1983 claim.

United States District Court
For the Northern District of California

Second, Plaintiff alleges that Defendants placed him on indeterminate SHU confinement based on insufficient evidence, constituting a violation of the Fourteenth Amendment.  Defendants' decision to retain Plaintiff on indeterminate SHU confinement was not based solely on Plaintiff's alleged prison gang affiliation, but on his extensive history of violence against correctional officers and inmates as well as his history of escape.  A reasonable prison classification board member in Defendants' position could have thought it was necessary to maintain Plaintiff's indeterminate SHU confinement to protect the safety of prison staff and other inmates.  Therefore, Defendants are entitled to judgment as a matter of law as to Plaintiff's Fourteenth Amendment based on their qualified immunity defense.

Third, Plaintiff alleges that Defendants denied him constitutionally adequate access to outdoor exercise, constituting a violation of the Eighth Amendment.  A reasonable prison official in Defendants' position could have thought denying him exercise was justified due to Plaintiff's failure to follow prison regulations by wearing a shared common jacket during yard time.  Therefore, Defendants are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim based on their qualified immunity defense.

Finally, Plaintiff alleges that Defendants compelled him to submit to DNA testing even though he had not committed any crime within California, constituting a violation of the Fourth Amendment.  Plaintiff has not shown that Defendants' behavior was

United States District Court

For the Northern District of California

unreasonable from the perspective of a prison official in that situation.  A reasonable prison official in Defendants' position could have thought his actions were justified because the Plaintiff fit the criteria and was compelled to submit a DNA sample under California's DNA Act.  Therefore, Defendants are entitled to judgment as a matter of law as to Plaintiff's Fourth Amendment claim based on their qualified immunity defense.

III. State Law Claims

        The Court's jurisdiction over Plaintiff's state law claims based on Defendants' failure to comply with New Mexico regulations is supplemental in nature.  28 U.S.C. § 1367(a).  A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Here, the Court has dismissed Plaintiff's Eighth Amendment claim related to Defendants' failure to treat his thyroid disease, and has found that Defendants are entitled to judgment as a matter of law as to Plaintiff's remaining federal claims.  Pursuant to § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

        Accordingly, Plaintiff's state law claims are DISMISSED without prejudice to re-filing in state court.

IV.  Defendant Schwartz

        As noted above, Defendant Schwartz has not been served and has not joined the other Defendants in their motion to dismiss and motion for summary judgment.

29

United States District Court
For the Northern District of California

1   It is apparent, however, that the claims against Defendant
2   Schwartz are without merit and subject to summary adjudication.
3   The allegations against Defendant Schwartz in the complaint are the
4   same as those against the other Defendants.  There is no suggestion
5   in the complaint, the exhibits attached thereto, or in the briefs
6   and exhibits filed in connection with the present motions, that the
7   analysis differs with respect to Defendant Schwartz as opposed to
8   the other Defendants.

9       Summary judgment may be properly entered in favor of unserved
10  defendants where (1) the controlling issues would be the same as to
11  the unserved defendants, (2) those issues have been briefed, and
12  (3) Plaintiff has been provided an opportunity to address the
13  controlling issues.  Columbia Steel Fabricators, Inc. v. Ahlstrom
14  Recovery, 44 F.3d 800, 802-03 (9th Cir.), cert. denied, 116 S. Ct.
15  178 (1995) (citing, inter alia, Silverton v. Department of the
16  Treasury, 644 F.2d 1341, 1345 (9th Cir 1981)).  Such is the case
17  here.  The Court has found that Plaintiff has not shown that a
18  state-created liberty interest exists under the WICC or that his
19  constitutional rights were violated; therefore, he cannot prevail
20  on his claims against Defendant Schwartz.  Accordingly, Defendant
21  Schwartz is entitled to summary judgment as a matter of law.

                              CONCLUSION

23      For the foregoing reasons,

24      1.  Defendants' motion to dismiss for failure to exhaust
26  Plaintiff's medical claim (docket no. 56) is GRANTED.  This claim
27  is dismissed without prejudice.  Defendants' motion for summary

                                  30

**United States District Court**
For the Northern District of California

1    judgment (docket no. 56) is GRANTED as to all other claims and

2    judgment in favor of said Defendants, as well as Defendant

3    Schwartz, shall be entered.[6]

4         2.    Plaintiff's state law claims are DISMISSED without

5    prejudice to re-filing in state court.

6         3.    Plaintiff's motion entitled "Motion for Excusable

7    Neglect" (docket no. 64) is construed a motion for extension of

8    time to file his opposition to Defendants' motion for summary

9    judgment.  Plaintiff states that he filed his opposition late

10   because it was inadvertently sent by prison officials to the Ninth

11   Circuit.  (Pl.'s Letter dated Feb. 15, 2007.)  Therefore,

12   Plaintiff's motion (docket no. 64) is GRANTED.  The time in which

13   Plaintiff may file his opposition to Defendants' Motion for Summary

14   Judgment will be extended nunc pro tunc to January 12, 2007, the

15   date Plaintiff's opposition was filed.

16

17        4.    The Clerk of the Court shall enter judgment in favor of

18   Defendants, terminate all pending motions and close the file.

19        5.    This Order terminates Docket nos. 56 and 64.

20        IT IS SO ORDERED.

21

22   DATED:    9/25/07         _____

23                            CLAUDIA WILKEN
                              United States District Judge
24

25

26   _____

27   [6] Because the Court has granted Defendants' motion to dismiss and
     motion for summary judgment, it need not address their allegations
28   that Plaintiff's claims are barred by issue preclusion or the statute
     of limitations.

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GARCIA,

            Plaintiff,

  v.

SCHWARZENEGGER et al,

            Defendant.

_____/

Case Number: CV05-04009 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 25, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Christopher Michael Young

Attorney General

Department of Justice

455 Golden Gate Avenue, Suite 11000

San Francisco,  CA 94102


Ricky  Garcia J-19600

C11-F-221

Pelican Bay State Prison

P.O. Box 7500

Crescent City,  CA 95532


Dated: September 25, 2007

                                Richard W. Wieking, Clerk

                                By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California